O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREY WENDELL PRICE,<br><br>  Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>  Defendant. | Case No.  5:17-cv-00367-KES<br><br>MEMORANDUM OPINION<br>AND ORDER |

Carey Wendell Price ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Disability Insurance Benefits ("DIB").  For the reasons discussed below, the ALJ's decision is AFFIRMED.

**I.**

**BACKGROUND**

In July 2013, Plaintiff applied for DIB alleging the onset of disability on May 14, 2013.  Administrative Record ("AR") 38, 63.  An ALJ conducted a hearing on July 24, 2015, at which Plaintiff, who was represented by an attorney, appeared and testified.  AR 7-36.  The ALJ issued an unfavorable decision on August 18, 2015. AR 63-72.

1

The ALJ found that Plaintiff suffers from the medically determinable severe impairments of "degenerative disc disease; history of aortic valve replacement; and mood and anxiety disorders." AR 65. Despite his physical impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with some additional environmental restrictions. AR 67. Despite his mental impairments, the ALJ found that Plaintiff could perform "non-complex routine tasks," but was precluded from jobs requiring hypervigilance, being responsible for the safety of others, public interaction, or significant teamwork. AR 67.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a customer order clerk/order taker. AR 70. The ALJ found, however, that Plaintiff could perform the medium, unskilled jobs of hand packager, packing machine operator, or warehouse worker. AR 71. Based on these findings, the ALJ concluded that Plaintiff was not disabled. Id.

## II.

## ISSUES PRESENTED

Issue One: Whether the ALJ erred in evaluating the opinion of Plaintiff's treating psychiatrist, Dr. Kohut. Dkt. 24, Joint Stipulation ("JS") at 3.

Issue Two: Whether the ALJ had a duty to develop the record further concerning Plaintiff's degenerative disc disease or aortic valve replacement. JS at 4, 14.

## III.

## DISCUSSION

**A.** **Issue One: The ALJ's Evaluation of Dr. Kohut's Opinion.**

**1.** **Rules for Weighing Conflicting Medical Evidence.**

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Turner v.

Comm'r of SSA, 613 F.3d 1217, 1222 (9th Cir. 2010) (citation omitted).  This rule, however, is not absolute.  Where the treating physician's opinion is not contradicted by an examining physician, that opinion may be rejected only for "clear and convincing reasons."  Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999).  Where, however, the opinions of the treating and examining physicians conflict, if the ALJ wishes to disregard the opinion of the treating physician, the ALJ must give "specific, legitimate reasons for doing so that are based on substantial evidence in the record."  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted).  See also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." (citation omitted)).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).  Thus, not all statements in medical records are medical opinions.  A treating physician may record a patient's history without stating an opinion.  So too, opinions from medical sources "on some issues … are not medical opinions… but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case …."  20 C.F.R. § 404.1527(d).  For this reason, a treating physician's opinion that the claimant is disabled or unable to work is not a medical opinion.  20 C.F.R. § 404.1527(d)(1).

**2.      Summary of Dr. Kohut's Letters.**

Plaintiff points to two, one-page letters written by Dr. Kohut.  JS at 3, citing AR 977 ("October 2013 Letter") and AR 967 ("February 2014 Letter").

In the October 2013 Letter, Dr. Kohut explained that Plaintiff's initial

psychiatric evaluation occurred on February 23, 2012. AR 977. He recited facts about Plaintiff's medical, familial, and educational history. Id. He explained that Plaintiff was receiving counselling from psychologist Dr. Shipley who had diagnosed Plaintiff as suffering from major depressive disorder, generalized anxiety disorder, social phobia, and obsessive-compulsive disorder ("OCD"). Id. He listed Plaintiff's medications and reported the Plaintiff had been compliant with all treatment recommendations. Id.

Dr. Kohut's February 2014 Letter is substantially like his October 2013 Letter, but he added the following paragraph:

> He has had complicating physical symptoms, including essential hypertension. He has been unable to deal with employment issues.

AR 967.

Plaintiff's counsel asserts that this paragraph contains a psychiatric opinion from Dr. Kohut, i.e., Dr. Kohut "determined that plaintiff has been unable to deal with employment issues due to" his diagnosed mental impairments. JS at 3. Plaintiff contends the ALJ erred by giving little weight to this opinion. Id.

**3. Analysis.**

Dr. Kohut's statement that Plaintiff "has been unable to deal with employment issues" is a patient history statement, not a medical opinion. The statement indicates that, during their treating relationship, Plaintiff has been unable to seek or obtain employment. This interpretation is consistent with the statement's context; it is part of a letter that primarily recites Plaintiff's history. This interpretation is also consistent with the statement's grammar; it is written in the past tense.

If Dr. Kohut's statement is interpreted as a medical opinion that Plaintiff is unable to work due to his mental impairments, then such an opinion would not be entitled to any deference. Rather, it would constitute an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1).

Even if Dr. Kohut's statement is interpreted as a medical opinion about

4

Plaintiff's symptoms and functional limitations (which would be an unreasonable interpretation), the ALJ did not err in evaluating it. The ALJ gave it "little weight" because the statement was "unsupported by the record as a whole." AR 70. The ALJ went on to explain that the statement was inconsistent with Plaintiff's limited treatment history and fairly normal daily activities. Id.

This was a specific and legitimate reason supported by substantial evidence. As the ALJ noted, during his treating relationship with Dr. Kohut, Plaintiff could live alone, care for his dog, drive, handle his own money, go out alone, shop in stores, and perform household chores, including cooking, grocery shopping, vacuuming, and laundry. AR 67-69. This level of functioning is inconsistent with someone suffering from disabling mental impairments. Indeed, consultative examining physician Dr. Smith, as well as agency medical consultants Drs. Loomis and Rosenshield, all opined that Plaintiff did not have a severe mental impairment. AR 42-43, 54-55, 321-27; see also AR 69-70 (ALJ's finding that, notwithstanding these opinions, Plaintiff did have severe mental impairments).

**B.    Issue Two:  The ALJ's Duty to Develop the Record.**

  **1.    Rules for Developing the Record.**

The claimant bears the burden of producing evidence to support a finding of disability. See 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). The Code of Federal Regulations further explains:

> [Y]ou have to prove to us that you are blind or disabled.  You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.  This duty is ongoing and requires you to disclose any additional related evidence about which you become aware.  This duty applies at each level of the administrative review process, including the Appeals Council level if the evidence

relates to the period on or before the date of the administrative law judge hearing decision. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 416.912(a) (version in effect from April 20, 2015 to March 26, 2017).[1]

Nevertheless, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (holding duty not met where ALJ proceeded without a hearing). This duty, however, is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); see also Agadzhanyan v. Astrue, 357 F. App'x 148, 150 (9th Cir. 2009) ("The ALJ's independent duty to develop the record was not triggered, because he did not find any piece of evidence to be ambiguous or difficult to interpret."). When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

**2.      The Medical Evidence of Plaintiff's Physical Impairments.**

Plaintiff testified that he stopped working in 2013 because of depression and because his employer of twenty-three years offered him a severance package. AR 10-13. When he applied for disability benefits, Plaintiff identified his physical impairments as high blood pressure, familiar tremors, and back pain. AR 193. As medical evidence of his back impairments, Plaintiff submitted:

• 2012 and 2013 treating progress notes from Dr. Stewart (AR 280-

---

[1] The Court applies the version of the regulations in effect when the ALJ issued his decision on August 18, 2015. AR 72. See Rose v. Berryhill, -- F. Supp. 3d --, 2017 WL 2562103 at n.3 (C.D. Cal. June 13, 2017).

311);

• An August 2013 lumbar spine x-ray (AR 287); and

• A September 2013 physical examination report by Dr. Pak of Pacific Orthopedic Medical Group (AR 312-16).

Plaintiff was hospitalized from October 27 through November 4, 2014 for heart surgery, including aortic valve replacement to address a history of congenital aortic stenosis. AR 69, citing AR 379-82. Upon discharge, he was "advised to progressively ambulate." AR 382. Although months elapsed between his surgery and the August 2015 hearing, Plaintiff does not point to any post-operative records discussing his recovery or documenting his follow-up appointments.

At the hearing when asked what physical impairments interfere with his ability to work, Plaintiff did not initially mention his heart surgery. AR 24. When asked about it later, he testified that it, along with his mental health issues, cause him to be short of breath. AR 25-26. He linked his difficulty lifting more than five pounds to back pain. AR 26.

In September 2013, agency physician Dr. S. Brodsky, D.O., opined that Plaintiff suffered from the severe physical impairment of "spinal disorder" but was capable of the full range of medium exertion work. AR 42, 44-45. He specifically commented, "No CE [consultative examination] is necessary." AR 42. In April 2014, agency physician Dr. Teresita Cruz, M.D., again opined that Plaintiff could do medium exertional work, but imposed further environmental restrictions due to his history of asthma. AR 56-58.

The ALJ ultimately determined Plaintiff's RFC consistent with the physical abilities posited by Dr. Cruz, stating that he gave the opinions of both Drs. Brodsky and Cruz "great weight." AR 69. The ALJ reasoned that these opinions were entitled to great weight because they were consistent with the evidence, specifically, Plaintiff's history of conservative treatment for his back pain and continuing ability to perform household chores requiring exertional abilities. AR 69.

### 3.    Analysis.

Plaintiff argues that the ALJ "should have requested a consultative examination to determine the severity of" Plaintiff's degenerative disc disease and history of aortic valve replacement, as well as what physical limitations stem from those impairments. JS at 14.

In the Joint Stipulation, Plaintiff does not argue that any evidence is ambiguous. Rather, Plaintiff claims that the ALJ's duty to develop the record was triggered by the "limited" nature of the evidence concerning Plaintiff's physical impairments. JS at 14. Plaintiff does not develop an argument as to why the evidence, however limited, was insufficient to evaluate Plaintiff's claim of disability. Instead, Plaintiff argues, "It would not have been that difficult to request a consultative examination to determine plaintiff's severe physical impairments, what limitations stem from those impairments, and to determine whether plaintiff meets/equals any listings." JS at 15.

Plaintiff misplaces the burden of proving disability. Per the authorities discussed above, Plaintiff bears the burden of producing evidence proving that he is disabled. That burden does not shift to the ALJ even if it "would not have been difficult" for the ALJ to request more information. See Leitner v. Comm'r, 361 F. App'x 876, 877 (9th Cir. 2010) (ALJ had no duty to order a consultative examination because claimant "bears the burden" to establish disability).

Regarding his back pain, Plaintiff does not present any argument in the Joint Stipulation concerning why the available records were insufficient to assess his condition.

Regarding to his aortic surgery, Plaintiff points out that the State Agency medical consultants rendered their opinions prior to his surgery, and their opinions might have changed if they had considered Plaintiff's medical records post-surgery. JS at 16. Plaintiff, however, points to nothing in the record indicating that the surgery was unsuccessful or caused any physical impairments likely to last a year or more.

8

Even after the Commissioner invited Plaintiff to explain what additional, relevant evidence he thought the ALJ could have been obtained via a consultative examination, Plaintiff did not do so. JS at 20 (rather than provide a reply, Plaintiff merely "reiterate[d] his initial contentions").

At his July 2015 hearing before the ALJ, knowing that the state agency physicians had rendered their opinions prior to his surgery, Plaintiff did not request a consultative examination concerning his physical issues. Although he was represented, his counsel did not indicate that any further development was warranted (AR 9), nor did he request that the record be held open after the hearing (AR 35-36). This undercuts Plaintiff's argument that the record before the ALJ was truly insufficient.

In sum, Plaintiff has not demonstrated that any circumstances triggering the ALJ's duty to further develop the record existed in this case.

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED.

Dated:     October 30, 2017

*Karen E. Scott*

KAREN E. SCOTT
United States Magistrate Judge